Concurring opinion filed by Circuit Judge REYNA.
WALLACH, Circuit Judge.
In this government contract bid protest appeal, three unsuccessful bidders challenged the decision of the United States Department of the Air Force Space Command (“Air Force”) to award a contract to the successful bidder, Exelis Services A/S (“Exelis”), for the operation and maintenance of an Air Force base in Greenland. The United States Court of Federal Claims (“Claims Court”) granted the challengers’ motions for judgment on the administrative record and enjoined the Air Force from proceeding under the contract with Exelis. The Claims Court found the award to Exelis — a wholly-owned subsidiary of a U.S.-based company — was contrary to the terms of the bid solicitation, which required that bidders “not be registered as a subsidiary of [a] foreign [i.e., non-Danish] company.” Per Aarsleff A/S v. United States, 121 Fed.Cl. 603, 612 (2015) (capitalization omitted). Because we conclude Exelis satisfied the disputed eligibility term of the bid solicitation, as properly interpreted, we reverse.
BACKGROUND
Thule Air Base is a United States Air Force base situated in a remote area of northwestern Greenland, a largely self-governing entity of the Kingdom of Denmark (“Denmark”). Exceptions to Greenland’s self-governance include foreign policy and defense, which remain under the control of the Danish government. In 1951, the United States and Denmark entered into an agreement that led to the establishment of the Thule Air Base and provided the United States rent-free use of the land on which the base is situated. A 1991 Memorandum of Understanding between the United States and Denmark, as amended following discussions in 2008 and 2009, provides that “either [p]arty may award contracts to commercial enterprises for goods and services, including construction projects, in Greenland, and shall procure directly from Danish/Greenlandic sources” whenever “feasible.” Id. at 609 (citation omitted).
In 2013, the Air Force and United States Department of State (“State Department”) entered into negotiations with the Danish Ministry of Finance to consider what criteria would be used to appropriately classify an entity as “Danish/Greenlandic” for the Thule Air Base bid solicitation. Following an expression of concern by the Danish Ministry of Foreign Affairs that an eligibility determination by the Danish government could be problematic under European Union procurement regulations,[1] it was suggested that Greenland, which was not a European Union member, take the lead in eligibility criteria formulation. However, because the government of Greenland was a partial owner of Greenland Contractors I/S (“Greenland Contractors”), the incumbent contractor supporting Thule Air Base, an eligibility determination by the government of Greenland would create a conflict of interest. Id. The State Department therefore decided to itself establish a “simple, transparent checklist of requirements” to determine eligibility. Id. at 610 (internal quotation marks and citation omitted).
During the course of this effort, [[name redacted]], a State Department employee stationed at the U.S. Embassy in Denmark, informed the Air Force contracting officer by email that “[i]n the searchable part of the CVR [Det Central Virksom-hedsregister, i.e., the Danish central business register] there is an information point called ‘type of company/virksomhedsform’ that [has] ‘subsidiary of foreign company[1] as a possibility, so there is a way to see if *1307 the company is fully registered as Danish or acting as a foreign subsidiary in Denmark.” J.A. 25,128251. As a result, the Air Force was under the belief, later shown to be mistaken, that the CVR provided a ready means for determining whether a company was a subsidiary of a foreign company. According to Copenhagen Arctic A/S (“Copenhagen Arctic”), one of the three unsuccessful bidders, the CVR contained an option to indicate whether a firm was registering as “[fjilialer af uden-landske aktieselskaber (in English: [b]mnch of a foreign owned public limited company).” Per Aarsleff, 121 Fed.Cl. at 610 n. 8 (emphasis added). Greenland Contractors asserts the State Department employee, [[name redacted]], “appears to have mistranslated the word ‘filial’ in Danish to mean ‘subsidiary,’ when that word in fact means ‘branch’ or ‘branch office.’” Corrected Confidential Opening and Response Brief of Cross-Appellant Greenland Contractors I/S (“Greenland Contractors Br.”) 10 (footnote omitted).
The Air Force issued a draft solicitation specifying, as a condition of eligibility, that bidders provide a
[corporation certificate (Selskabscertifi-kat m. oblat) verifying that your company is registered as a business in the Kingdom of Denmark. (Det Central Virksomhedsregister (CVR); Det Grpnlandske Erhervsregister (GER); Skráseting Fproya (Skrás. Nr.)) NOTE: THE REGISTERED OFFICE OF THE ENTERPRISE SHALL BE IN THE KINGDOM OF DENMARK AND SHALL NOT BE REGISTERED AS A SUBSIDIARY OF FOREIGN COMPANY.
Per Aarsleff, 121 Fed.Cl. at 611-12. The draft solicitation further required a “[s]igned letter from an officer of a bank within the Kingdom of Denmark verifying that your company conducts business with that institution.” Id. at 612.
When a potential bidder asked “[w]hat do you mean by ‘not be registered’?,” id. the Air Force posted the following answer, which echoed the email of the State Department employee, [[name redacted]]: “In the searchable part of the CVR [ ] there is an information point called ‘type of company/virksomhedsform’ that has ‘subsidiary of foreign company[1] as a possibility, so there is a way to see if the company is fully registered as Danish or acting as a foreign subsidiary in Denmark.” Per Aarsleff A/S (Per Aarsleff (GAO)), B-410782 et al., 2015 WL 1004252, at *8 (Comp. Gen. Feb. 18, 2015). When an Exelis partner asked whether a company would be eligible to bid if it is a “Danish registered company ... owned by a foreign company but” can show “[i]n the CVR register [it] is registered as. a[n] A/S[2] (limited company),” the Air Force replied by copying the eligibility requirements set forth in the draft solicitation and did not answer the question directly. Per Aarsleff, 121 Fed.Cl. at 612 (footnoted added). The final solicitation contained the same requirements set forth in the draft solicitation.
Four bidders — Per Aarsleff A/S (“Per Aarsleff’), Copenhagen Arctic, Exelis, and incumbent Greenland Contractors — each submitted a bid in response to the final solicitation. Exelis, a wholly-owned Danish subsidiary of United States-based Veetrus Systems Corporation (“Veetrus”), submitted the lowest bid and was awarded the contract. The three unsuccessful bidders each filed protests with the Government Accountability Office (“GAO”), asserting Exelis “was incorporated in Denmark only shortly before proposal submission and is a wholly-owned subsidiary of Excelis Systems Corporation [now known as Veetrus], a United States based company.” Per Aar- *1308 sleff (GAO), 2015 WL 1004252, at *6. The GAO denied the protests, id. at *16, concluding the solicitation “was clear on its face as to the issue of registration” and that “nothing in the solicitation provides for consideration of [ownership or control],” id. at *8. It noted the Air Force’s answers to the questions posed by prospective bidders made clear “that the Air Force believed that there was within the CVR a place for a firm to indicate that a firm was a subsidiary of a foreign firm.” Id. The GAO further stated that “[e]ven if the solicitation was ambiguous as to the registration requirement” it would have had to have been challenged “prior to the solicitation of bids,” and the protesters challenge was therefore untimely. Id. at *9 n. 11.
Following the GAO decision, the three unsuccessful bidders filed separate complaints in the Claims Court, challenging the Air Force’s award of the contract to Exelis. Per Aarsleff, 121 Fed.Cl. at 620. The Claims Court granted the plaintiffs’ motions for judgment on the administrative record. Id. at 636. It found the eligibility criteria specified in the final solicitation “defective]” and further found the GAO’s interpretation contrary to the “evident intent of the procuring agency.” Id. at 625. The Claims Court concluded that “[s]ome recasting of the [solicitation] language” was “necessary” in order to avoid an interpretation that would allow a foreign company to qualify by creating a Danish subsidiary. Id. Such an outcome, the Claims Court found, would render the registration provision “illusory” and was therefore unreasonable. Id. To the extent the provision was ambiguous or reflected a lack of clarity, the Claims Court noted, the doctrine of contra proferentem (“against the offeror”) places the risk of such drafting errors on the drafter and “ ‘saves contractors from hidden traps not of their own making.’” Id. at 628 (quoting Metcalf Const. Co. v. United States, 53 Fed.Cl. 617, 629 (2002)). The Claims Court concluded the only reasonable interpretation of the solicitation language was “that Danish subsidiaries of foreign entities did not qualify as eligible.” Id. at 627. Accordingly, the Claims Court set aside the contract with Exelis and enjoined the Air Force from “proceeding with th[e] contract.” Id. at 636.
On appeal, Exelis argues the Air Force “rationally determined that Exelis [] was eligible for award of the Thule [Air Base contract] under the [solicitation’s] plain and unambiguous eligibility requirements,” and that the Claims Court erred in concluding otherwise. Non-Confidential Opening Brief of Defendant-Appellant Exelis Services A/S 33 (capitalization omitted). The United States takes a similar position, arguing the Claims Court “erred by rewriting the unambiguous language of the solicitation to add a non-existent ownership requirement.” Brief for Defendant-Appellant United States (“United States Br.”) 24 (capitalization omitted). By contrast, the three unsuccessful bidders argue the Claims Court correctly interpreted the solicitation language and found that Exelis did not meet the eligibility requirements. See, e.g., Greenland Contractors Br. 24 (“The trial court properly determined that the Air Force failed to comply with the [solicitation’s] eligibility requirement.” (capitalization omitted)); Copenhagen Arctic A/S’ Confidential Principal Cross-Appeal and Response to Defendants-Appellants’ Opening Briefs (“Copenhagen Arctic Br.”) 20 (“The trial court’s decision to excise the ‘registered as’ language from the solicitation was not only correct — it was required.” (capitalization omitted)); Brief of Plaintiff-Appellee Per Aarsleff (“Per Aarsleff Br.”) 19 (“The Claims Court correctly interpreted [the solicitation] and properly held that the Air Force’s award violated the eligibility restriction.” (capitalization modified)). This court has jurisdiction over final decisions of the Claims *1309 Court pursuant to 28 U.S.C. § 1295(a)(3) (2012).
Disoussion
I. Standards of Review
Protests of agency procurement decisions are reviewed under the standards set forth in the Administrative Procedure Act (“APA”), see 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. §706), “by which an agency’s decision is to be set aside only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,” NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (internal quotation marks omitted); see also PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010) (A court “must sustain an agency action unless the action does not evince rational reasoning and consideration of relevant factors.” (internal quotation marks, citation, and alterations omitted)). “This court reviews the trial court’s determination on the legal issue of the government’s conduct, in a grant of judgment upon the administrative record, without deference.” Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). That is, we review anew the question of whether the procurement decision of the Air Force was arbitrary and capricious under the APA. See PAI Corp., 614 F.3d at 1351. “Interpretation of [a bid] solicitation is a question of law” that is reviewed de novo. Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1353 (Fed. Cir. 2004).
II. The Claims Court Erred in Its Interpretation of the Solicitation Language
The Ah’ Force issued a final solicitation, including an eligibility provision which stated:
L-3. OFFEROR ELIGIBILITY
Participation in this acquisition is limited to Danish/Greenlandic enterprises. Enterprises must possess a corporation certificate (Selskabscertifikat m. oblat) verifying the company is registered as a business in the Kingdom of Denmark. ... NOTE: THE REGISTERED OFFICE OF THE ENTERPRISE SHALL BE IN THE KINGDOM OF DENMARK AND SHALL NOT BE REGISTERED AS A SUBSIDIARY OF FOREIGN COMPANY....
Per Aarsleff, 121 Fed.Cl. at 613-14. The Claims Court interpreted this language to mean “that Danish subsidiaries of foreign entities did not qualify as eligible.” Id. at 627. It noted the acknowledgment by the Air Force that “there is not, in fact, a way to register as a subsidiary of [a] foreign company in the CVR,” id. at 625 (internal quotation marks and citations omitted), and reasoned that because “it was impossible to register as a foreign-owned subsidiary in the CVR,” id. at 629, the eligibility provision would lack “any significant meaning” if it were interpreted to allow “foreign entities [to] create Danish subsidiaries prior to submission of a proposal and then qualify for an award,” id. at 625.
We have previously explained the legal framework when interpretation of a term in a bid solicitation is contested:
We begin with the plain language of the document. The solicitation is ambiguous only if its language is susceptible to more than one reasonable interpretation. If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning; we may not resort to extrinsic evidence to interpret them. Finally, we must consider the solicitation as a whole, interpreting it in a manner that harmonizes and gives reasonable meaning to all of its provisions.
Banknote Corp. of Am., 365 F.3d at 1353 (emphases added) (citations and footnote omitted). It is to this framework that we now turn.
*1310 A. The Eligibility Provision Itself Is Ambiguous
Solicitation language “is ambiguous ... if its language is susceptible to more than one reasonable interpretation.” Id. Here, the phrase “shall not be registered as a subsidiary of a foreign company,” Per Aarsleff, 121 Fed.Cl. at 614 (capitalization omitted), could reasonably be interpreted to have at least two meanings. First, it could mean that bidders are ineligible if the registration in the CVR facially indicates that the business is a subsidiary of a foreign company. Under this interpretation, “registered as” indicates the registrant actively indicated, such as by checking a box in the CVR, that it was a subsidiary of a foreign company. Second, a company could be “registered as a subsidiary of a foreign company” if it is registered in the CVR and also a subsidiary of a foreign company, whether or not subsidiary status was affirmatively indicated at the time of registration and whether or not that status is apparent from inspecting the CVR after registration.
The presence of ambiguity is demonstrated by the inquiries received during the solicitation process. See Per Aarsleff (GAO), 2015 WL 1004252, at *8 (“What do you mean by ‘not be registered’?”); id. (“Please provide further clarification as to what a ‘Danish Enterprise’ is as will be interpreted by the US Air Force?”). These inquiries show that potential bidders were uncertain as to how the Air Force intended to interpret the eligibility language. Both the GAO and the Claims Court concluded, incorrectly, the eligibility provision was not' ambiguous, but each recognized the language was problematic. See id. (concluding “the [solicitation] was clear on its face as to the issue of registration in the CVR” but noting that “[e]ven if there was some doubt as to the meaning of this [solicitation] provision ... , the Air Force provided two Q & As that removed all doubt as to how the agency interpreted the provision”); Per Aarsleff, 121 Fed.Cl. at 628 & n. 35 (finding “[t]he language in the [s]olic-itation was not ambiguous but rather was defective,” but also discussing the doctrines of patent ambiguity and contra prof-erentem, which address situations where ambiguity is present). To the extent the Claims Court concluded the language of the eligibility provision itself was not ambiguous, it erred.[3]
*1311 B. A Question and Answer Clarified the Meaning of the Eligibility Provision
One question and answer removed the ambiguity present in the eligibility provision of the solicitation agreement. When the Air Force was asked “ ‘What do you mean by ‘not be registered’?,” it posted a response stating “[i]n the searchable part of the CVR there is an information point called ‘type of company/virksomhedsform’ that has ‘subsidiary of foreign company’ as a possibility, so there is a way to see if the company is fully registered as Danish or acting as a foreign subsidiary in Denmark.” Id. at 612. This answer directly resolved the ambiguity, clarifying that the provision refers to whether the CVR facially indicates the company is a subsidiary of a foreign company. See J.A. 101535 (showing a drop-down menu in the CVR where registrants could select from among, e.g., “A.M.B.A.” (share company with limited liability), “Interessentskab” (partnership) or “Filial af udenlandsk virk-somhed” (branch of a foreign company)). Because the relevant question and answer was incorporated into the final March 2014 solicitation, it is part of the final solicitation.[4] See BayFirst Sols., LLC v. United States, 102 Fed.Cl. 677, 689 n. 15 (2012) (“[AJnswers [to bidder’s questions], when circulated to all [bidders] as an attachment to an amendment signed by the contracting officer, constitute an amendment of the solicitation.”).
We have stated that “where a government solicitation contains a patent ambiguity, the government contractor has a duty to seek clarification from the government, and its failure to do so precludes acceptance of its interpretation in a subsequent action against the government.” Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (internal quotation marks and citation omitted). Under Blue & Gold Fleet, the questions and answers posed during an agency solicitation therefore play a central role in the interpretation of the solicitation provisions. In the present matter, they are controlling. We hold the disputed eligibility provision, when properly interpreted, refers to whether the CVR facially indicates the company is a subsidiary of a foreign company.
III. Exelis Was Eligible Under the Terms of the Solicitation
Given that the eligibility provision, as clarified in the Air Force’s answer to a potential bidder’s question, refers to whether the CVR facially indicates the company is a subsidiary of a foreign company, Exelis was eligible. The Claims Court found, and the unsuccessful bidders do not contest,' that Exelis’s
proposal included: (1) a certificate from the Danish Business Authority certifying Exelis Services as a legally registered public limited company in Denmark with a report documenting its registration; and (2) a letter signed by a Danish bank confirming a business relationship with Exelis Services and stating that the account was satisfactorily maintained.
Per Aarsleff, 121 Fed.Cl. at 617 n. 21. These are the documents required under the eligibility provisions. See id. at 614. As the GAO correctly noted, although the unsuccessful bidders seek “to add the issue of ownership or control to the [solicitation], nothing in the solicitation provides for con *1312 sideration of these criteria.” Per Aarsleff (GAO), 2015 WL 1004252, at *8. Critically, there is nothing in the CVR that facially indicates Exelis is a subsidiary of a foreign company because, as the three unsuccessful bidders concede, it was impossible for the CVR to facially indicate such status. See Copenhagen Arctic Br. 30-31; Greenland Contractors Br. 9; Per Aarsleff Br. 14.
While it is true that any company could meet the eligibility criterion by simply registering in Denmark, the record indicates the Danish Ministry of Foreign Affairs was aware of the relative ease of corporate registration. According to an email by [[name redacted]], a State Department employee, [[the Danish government was aware of the ease of corporate registration and its relevance to the bidder eligibility criteria]]. J.A. 111631. The unsuccessful bidders cite no authority suggesting that if eligibility criteria are easily met they are invalid. Accordingly, Exelis met the disputed eligibility criterion.
IV. Copenhagen Arctic and Greenland Contractors Waived Their Objections to the Eligibility Provision
“[A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a [§ 1491(b)] bid protest action in the [Claims Court].” Blue & Gold Fleet, 492 F.3d at 1313 (emphasis added). The present matter is a bid protest action under § 1491(b), and it is undisputed that the parties did not object to the eligibility provision prior to the close of bidding. See, e.g., Copehagen Arctic Br. 40 (Copenhagen Arctic “was not required to file a pre-award protest....”); Greenland Contractors Br. 39-44 (failing to argue that a pre-award protest was made). Per Aarsleff asserts that it “did not object to the terms of the [solicitation]” and instead challenged the Air Force’s award as “inconsistent with the [solicitation].” Per Aar-sleff Br. 35 (second emphasis added).
Greenland Contractors and Copenhagen Arctic argue they did not waive their objections to the eligibility provision because any ambiguity or defect in the provision was latent rather than patent. See Copenhagen Arctic Br. 36 (“The trial court’s decision that the mistake in the solicitation was latent was correct.” (capitalization omitted)); Greenland Contractors Br. 39 (“The [solicitation] defect was not patent....” (capitalization omitted)); see also Per Aarsleff Br. 35 (“The CVR’s inability to register subsidiaries was not patent.”). Whether an' ambiguity or defect is patent is an issue of law reviewed de novo. Stratos Mobile Networks USA, LLC v. United States, 213 F.3d 1375, 1380 (Fed. Cir. 2000). A defect is patent if it is “an obvious omission, inconsistency or discrepancy of significance.” E.L. Hamm & Assocs., Inc. v. England, 379 F.3d 1334, 1339 (Fed. Cir. 2004); see also Stratos, 213 F.3d at 1381 (“A patent ambiguity is present when the contract contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties.”). By contrast, “[a] latent ambiguity is a hidden or concealed defect which is not apparent on the face of the document, could not be discovered by reasonable and customary care, and is not so patent and glaring as to impose an affirmative duty on plaintiff to seek clarification.” Analytical & Research Tech., Inc. v. United States, 39 Fed.Cl. 34, 46 (1997) (internal quotation marks and citation omitted).
Here, the ambiguity in the solicitation was patent, as reflected in the questions received by the Air Force and the two plausible interpretations indicated above. Following clarification during the question *1313 and answer period, the ambiguity was removed, and so there was at that time neither a patent nor a latent ambiguity.
The question then becomes whether the solicitation language, as properly interpreted in light of the questions and answers, contained a possible defect, and if so, whether the possible defect was patent or latent. A patent defect triggers the obligation to challenge the solicitation language and failure to do so generally constitutes waiver. See Bannum, Inc. v. United States, 779 F.3d 1376, 1380 (Fed. Cir. 2015) (“A bidder that challenges the terms of a solicitation in the [Claims Court] generally must demonstrate that it objected to those terms prior to the close of the bidding process” or it “waives its ability to raise the same objection after-wards in a § 1491(b) action.” (internal quotation marks and citation omitted)); E.L. Hamm & Assocs., 379 F.3d at 1339 (“[W]hen a contractor is faced with an obvious omission, inconsistency or discrepancy of significance, he is obligated to bring the situation to the government’s attention if he intends subsequently to resolve the issue in his own favor.”).
Without resolving the issue of whether the eligibility provision is defective, we conclude any purported defect is patent, and that the failure of the unsuccessful bidders to challenge the potentially defective provision prior to the close of bidding prevents them from doing so now. See E.L. Hamm & Assocs., 379 F.3d at 1339. To the extent there is a defect, it is a patent one because it could have been “discovered by reasonable and customary care,” Analytical & Research Tech., 39 Fed.Cl. at 46, such as by examining the CVR to determine whether one could facially indicate status as a subsidiary of a foreign company when registering, see J.A. 101535. Such an effort is particularly reasonable in light of the attention drawn to the registration issue during the question and answer period. Moreover, by the terms of the solicitation, each eligible bidder had to be registered as a business in Denmark, Per Aarsleff, 121 Fed.Cl. at 611-12, and so would have had to proceed through the registration process. Even if this were not the case, “[t]he parties are charged with knowledge of law and fact appropriate to the subject matter....” Turner Constr. Co. v. United States, 367 F.3d 1319, 1321 (Fed. Cir. 2004). Here, knowledge of the CVR is appropriate to the subject matter of the solicitation, which requires registration in the CVR as a condition of eligibility.
Furthermore, the record demonstrates that whether the CVR facially indicated foreign subsidiary status could have been “discovered by reasonable and customary care.” Analytical & Research Tech., 39 Fed.Cl. at 46. When Per Aarsleff sought to challenge the bid award to Exelis, its own declarant noted the CVR is “made publicly available,” J.A. 100441, and that it is “evident from the attached screenshot” that “ ‘subsidiary of a foreign company’ ” is not an option, J.A. 100442. An associate of the same declarant telephoned the Danish Business Authority, which confirmed the CVR does not have an option for registering as a foreign subsidiary. J.A. 100442-43. This testimony suggests no great effort was required to determine whether it was possible to register as a subsidiary of a foreign company, and that Per Aarsleff did in fact make such a determination after the bid protest was initiated.
The purpose of the waiver rule is to avoid just such after-the-fact litigation, where the issue could have been raised prior to the close of bidding. As we explained in Blue & Gold Fleet:
In the absence of a waiver rule, a contractor with knowledge of a solicitation defect could choose to stay silent when submitting its first proposal. If its first *1314 proposal loses to another bidder, the contractor could then come forward with the defect to restart the bidding process, perhaps with increased knowledge of its competitors. A waiver rule thus prevents contractors from taking advantage of the government and other bidders, and avoids costly after-the-fact litigation.
492 F.3d at 1314. Although the record does not indicate that the unsuccessful bidders knew it was impossible to register as a subsidiary of a foreign company, they could reasonably have known and in any event are “charged with knowledge of law and fact appropriate to the subject matter....” Turner Constr. Co., 367 F.3d at 1321. Greenland Contractors and Copenhagen Arctic therefore waived any objection that the eligibility provision of the contract was defective.
V. Cross-Appeals by Greenland Contractors and Copenhagen Arctic
In Greenland Contractors’ cross-appeal, it argues that “[e]ven if this [c]ourt were to find Exelis eligible to compete in this procurement, there is another basis for setting aside the award to Exelis.” Greenland Contractors Br. 56. That basis, Greenland Contractors explains, is that “the Air Force unreasonably failed to evaluate the [other bidders’] compliance with the [solicitation] requirement to maximize subcontracts from Danish and Greenlandic sources.” Id. (capitalization omitted); see also id. (citing J.A. 105279, ¶ 3.1.16).
Greenland Contractors notes that bidders were required to “‘[d]ocument and justify any exceptions’” to the requirement of maximizing procurement from Danish and Greenlandic sources. Id. at 57 (quoting J.A. 105279, ¶ 3.1.16)). It further notes that under section H-6 of the solicitation, the obligations to maximize contract-related purchases and subcontracts from Danish and Greenlandic sources and justify any exceptions were to “ ‘take[ ] precedence in the performance of th[e] contract.’ ” Id. (quoting J.A. 105227, see. H-6).
According to Greenland Contractors, the proposals of Exelis, Copenhagen Arctic, and Per Aarsleff “made clear” these bidders “would not maximize subcontracts from Danish and Greenlandic sources,” id. at 58 (capitalization omitted), and the Air Force’s failure to evaluate compliance with the solicitation requirement constitutes an arbitrary action requiring reversal, id. at 56-57. Specifically, Greenland Contractors asserts the other bidders “made clear in their proposals that they intended to rely heavily on their respective U.S.-based partners to perform significant portions of th[e] contract” and that “[n]one of these [bidders] made any effort to document or justify their use of primarily non-Danish and non-Greenlandic sources.” Id. at 58.
Copenhagen Arctic also cross-appeals, similarly asserting the Claims Court erred in failing to evaluate whether Per Aar-sleffs bid proposal satisfied the material terms of the solicitation. See Copenhagen Arctic Br. 47; see also id. at 54 (“[Per] Aarsleffs proposal flouted the material terms of the [solicitation.... ”). Copenhagen Arctic limits its cross-appeal to Per Aarsleff and does not extend its argument to the remaining two bidders. See id. at 47, 50-54.
According to Copenhagen Arctic, sections L and M of the solicitation “conditioned the acceptability of a proposal [on] demonstrating the ability -to comply with the terms of the [Performance Work Statement].” Id. at 49. Specifically, it notes that “Section 3.1.16 of the [Performance Work Statement] required all [bidders] to ‘maximize and document contract-related purchases and subcontracts from Danish and Greenlandic sources.’” Id.; see J.A. 105279. It argues Per Aarsleffs proposal “clearly did not,” Copenhagen Arctic Br. *1315 50, meet this requirement because “[Per] Aarsleff teamed up with ... an American company,” id. (footnote omitted), which would “perform every single one of the performance obligations of Section 3 of the [Performance Work Statement],” id. at 50-51.
The Claims Court correctly rejected the arguments of Greenland Contractors and Copenhagen Arctic. See Per Aar-sleff, 121 Fed.Cl. at 634. By their own terms, the statements in section H-6 of the solicitation and paragraph 3.1.16 of the Performance Work Statement refer to contract performance, not eligibility criteria. See J.A. 105227 (“H-6. Statutory Restrictions on Foreign Acquisitions. The requirements at [Performance Work Statement] [section] 3.1.16 to maximize and document contract related purchases and subcontracts for Danish and Greenlandic sources ... take precedence in the “performance of this contract.” (emphasis added) (capitalization omitted)); J.A. 105279 (“3.1.16 Maximize and document contract-related purchases and subcontracts from Danish and Greenlandic sources.... Performance Standards!:] a) ... Compliance with clause H-6.... b) ... Purchases made from the [U.S.] will comply with [Federal Acquisition Regulation] 52.223-2.... ” (emphases added)).
The Air Force did not act arbitrarily in declining to evaluate, as a condition of eligibility, whether each bidder would during the course of performance comply with these Danish/Greenlandic sourcing requirements. Each bidder agreed to comply with the requirements of paragraph 3.1.16. See Per Aarsleff, 121 Fed.Cl. at 632. Exelis, for example, stated it “will comply with all of the Performance Work Statement [ ] requirements and takes no exception to any of the terms, conditions, representations, certifications or provisions in this solicitation.” J.A. 55, 106314. As we have explained:
Where a[ ] [bidder] has certified that it meets the technical requirements of a proposal, the Contracting Officer is entitled to rely on such certification in determining whether to accept a bid, and the [bidder’s] potential failure to comply with the proposal requirements is ordinarily “a matter of contract administration,” which does not go to the propriety of accepting the bid.
Allied Tech. Grp., Inc. v. United States, 649 F.3d 1320, 1330 (Fed. Cir. 2011).
Allied sets forth an exception to the general rule that an agency may rely upon an offeror’s certification of compliance with a solicitation’s technical requirements. The exception states that “‘where a proposal, on its face, should lead an agency to the conclusion that [a bidder] could not and would not comply with the [applicable requirement],’ ” it “affect[s] the propriety of accepting the [bidder’s] offer.” Id. (quoting Centech Grp., Inc. v. United States, 554 F.3d 1029, 1039 (Fed. Cir. 2009)). Here, the requirement to “[m]aximize and document contract-related purchases and subcontracts from Danish and Greenlandic sources,” J.A. 105279, is not so inflexible that proposals contemplating the involvement of United States “teaming partners],” Per Aarsleff, 121 Fed.Cl. at 631, see also Copenhagen Arctic Br. 50-51, should have necessarily led the Air Force to the conclusion that the bidders “could not and would not comply” with paragraph 3.1.16 of the Performance Work Statement or section H-6 of the solicitation, Allied, 649 F.3d at 1330, contrary to those bidders’ express certifications. The Claims Court noted, for example, that Exelis and Per Aarsleff “appear to have been planning to” [[perform the agreement in a manner consistent with the solicitation requirements]]. Per Aarsleff, 121 Fed.Cl. at 633. Indeed, Greenland Contractors concedes that bidders were not “per se prohib *1316 ited from using any U.S. subcontractors.” Greenland Contractors Br. 69.
Moreover, paragraph 3.1.16 of the solicitation contemplates exceptions to the requirement to maximize and document contract-related purchases and subcontracts from Danish and Greenlandic sources, so long as those exceptions are “document[ed] and justif[ied].” J.A. 105279. Greenland Contractors fails to explain how the face of Exelis’s proposal (or those of the other bidders) establishes that it will be unable to “document and justify” any exceptions that might arise during performance, asserting only that Exelis has not yet offered any justifications. See, e.g., Greenland Contractors Br. 58 (“None of [the other bidders] made any effort to document or justify their use of primarily non-Danish and non-Greenlandic sources.”).
In short, Greenland Contractors has failed to establish that the decision of the Air Force to award the contract to Exelis “ ‘lacked a rational basis,’ ” which is the relevant showing when seeking to set aside a procurement decision as arbitrary or capricious under section 706(2)(A) of the APA. Centech, 554 F.3d at 1037 (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)); see also id. (noting a procurement decision may also be set aside “ ‘if ... the procurement procedure involved a violation of regulation or procedure’ ” (quoting Garufi, 238 F.3d at 1332)).
C0NCLUSION
In light of the foregoing, the Claims Court erred in “recasting” an eligibility provision for which the meaning was clarified during the question and answer period, and erred in its conclusion that any defect was latent. Because Exelis satisfied the terms of the eligibility provision as properly construed, and because Greenland Contractors has not established that Exelis’s proposal on its face should have led the Air Force to conclude Exelis could not and would not comply with the obligation to maximize subcontracts from Danish and Greenlandic sources, the Air Force did not act arbitrarily in its award of the contract to Exelis. The decision of the United States Court of Federal Claims is
REVERSED

. The Air Force's Contracting Officer explained, in his Statement of Facts, his understanding that [[confidential information redacted]]. J.A. 100673.

. "A/S” is an abbreviation for "Aktieselskab,” or Danish limited company. J.A. 32.

. In reaching its decision, the Claims Court considered two documents that were not before the Air Force when it awarded the contract to Exelis on October 31, 2014: (1) the declaration of Ambassador Jonas Bering Liis-berg, Danish Under-Secretary for Legal Affairs (Mar. 2, 2015) ("Liisberg Declaration”) (J.A. 220-31); and (2) and the Joint Statement of the United States and the Kingdom of Denmark on the Resolution of the Thule Base Maintenance Contract Acquisition Matter (Mar. 2015) ("Joint Statement”) (J.A. 690). See, e.g., Per Aarsleff, 121 Fed.Cl. at 611, 618, 626 (citing the Liisberg Declaration); id. at 608-09 & n. 6, 618, 626 n. 32 (citing the Joint Statement). Notably, the Claims Court considered these documents without first "determining] whether supplementation of the record was necessary in order not 'to frustrate effective judicial review.’ ” Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (quoting Camp v. Pitts, 411 U.S. 138, 142-43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)); see also id. at 1380 ("The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious” standard into effectively de novo review.’ ” (quoting Murakami v. United States, 46 Fed.Cl. 731, 735 (2000))). Although we reverse the Claims Court based upon its erroneous interpretation of the contract language, we note this court has previously found abuse of discretion where a trial court allowed supplementation of the record without first making the required determination. Id. at 1381.

. There appears to be no dispute that the question and answer were incorporated into the final solicitation. See, e.g., United States Br. 11 ("These questions and answers were included verbatim in the March 2014 solicitation.” (citing J.A. 105469.38&emdash;.39)); Greenland Contractors Br. 9 (“The Q&A response was also published as part of the [solicitation] and, thereby, incorporated into the [solicitation].” (citing J.A. 105469.38)).