# United States Court of Appeals for the Federal Circuit

---

**M.R. PITTMAN GROUP, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-2325

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01397-CFL, Senior Judge Charles F. Lettow.

---

Decided: May 22, 2023

---

JONATHAN S. FORESTER, Riess LeMieux, LLC, New Orleans, LA, for plaintiff-appellant. Also represented by CHRISTOPHER K. LEMIEUX.

GALINA I. FOMENKOVA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

---

Before DYK, TARANTO, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

M.R. Pittman Group, LLC appeals a decision of the United States Court of Federal Claims dismissing M.R. Pittman's bid protest under Court of Federal Claims Rule 12(h)(3) for lack of subject matter jurisdiction. The Court of Federal Claims determined, pursuant to the *Blue & Gold* waiver rule, that M.R. Pittman waived its protest when it failed to object prior to the close of the bidding process. We hold that waiver under *Blue & Gold* does not deprive the Court of Federal Claims of subject matter jurisdiction, making dismissal of M.R. Pittman's claim improper under Rule 12(h)(3). That error was harmless, however, because dismissal was proper under Court of Federal Claims Rule 12(b)(6). Consequently, we affirm.

I

M.R. Pittman Group, LLC filed suit in the United States Court of Federal Claims in May of 2021, protesting the United States Army Corps of Engineers' (USACE) award of a contract for the repair of pump units in Louisiana. The USACE issued Solicitation No. W912P820B0063 on December 21, 2020 for the repair of pump units at Wilkinson Canal Pump Station in Plaquemines Parish, Louisiana. Pump stations, such as the one at issue, protect Louisiana residents and infrastructure during hurricane season and other times of significant flooding. At the time of the solicitation, the pump station was only operating at 50% capacity.

The USACE posted the solicitation for the repair of these pump units on beta.SAM.gov, the government-wide point of entry providing electronic access to "[g]overnment business opportunities greater than $25,000." The webpage with the link to the solicitation noted, "**[t]his is a 100% Small Business Set Aside procurement.** All Small Business concerns representing itself as

such . . . under NAICS Code: 811310 may submit offers."[1] J.A. 2 (emphasis original); J.A. 256. The solicitation itself did not include a reference to NAICS Code 811310. It did, however, incorporate by reference Federal Acquisition Regulation (FAR) 52.219-6—titled "Notice Of Total Small Business Set-Aside"—which warns that "[o]ffers are solicited only from small business concerns," and "[a]ny award resulting from this solicitation will be made to a small business concern." J.A. 2–3; J.A. 61. Bids were due on January 20, 2021.

M.R. Pittman submitted a bid on that date and was the lowest bidder out of the four companies that submitted bids. The USACE informed M.R. Pittman that the contract was set aside for a small business under NAICS Code 811310 and requested that M.R. Pittman update its NAICS code status. But M.R. Pittman did not qualify as a small business under NAICS Code 811310 and was thus ineligible for the award. The USACE then awarded the contract to J. Star Enterprise, Inc., a small business based in New Orleans, Louisiana.

On February 3, 2021, M.R. Pittman filed a bid protest with the Government Accountability Office (GAO). The crux of M.R. Pittman's protest was that the omission of NAICS code 811310 meant that the solicitation could not be treated as a set-aside for small business concerns. The GAO dismissed the protest after holding that M.R. Pittman failed to timely challenge the solicitation.

M.R. Pittman then filed suit in the Court of Federal Claims along with a motion for a temporary restraining order and preliminary injunction (collectively, the motions

---

[1] The North American Industry Classification System (NAICS) code is the official standard used to determine whether a business is a "small business concern" for a given contract.

for emergency relief or emergency motions). M.R. Pittman again argued that the omission of the relevant NAICS code meant that the solicitation could not be treated as a small business set-aside.

The trial court held an initial status conference to determine a schedule for the initial proceedings, including the motions for emergency relief. The government indicated that it intended to move to dismiss and was contemplating filing its response to the motions for emergency relief and a motion to dismiss in the same document. The government explained that combining the two documents made sense because "the discussion of the likelihood of success on the merits in our view largely collapses with actual success on the merits." J.A. 184 at Tr. 15:19–24. In order to accommodate the USACE's desire to have these pumps repaired as quickly as possible, the trial court decided to have separate briefing schedules for the emergency motions and the motion to dismiss. The Court explained that M.R. Pittman's deadline to respond to any motion to dismiss would be decided at the hearing for the emergency motions.

The government did in fact file a combined Motion to Dismiss and Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. The combined filing argued that, under *Blue & Gold, Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), M.R. Pittman had waived its protest grounds by failing to raise the issue prior to the close of bidding. The combined filing did not make separate arguments on this issue for the motion to dismiss and response to the emergency motions. M.R. Pittman filed a Reply to the government's Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. M.R. Pittman did not file a separate response to the motion to dismiss, as the trial court had not set a response brief deadline for the motion to dismiss. M.R. Pittman did, however, respond to the *Blue & Gold* waiver argument set out in the government's

combined filing when it addressed the reasonable likelihood on the merits factor.

The Court of Federal Claims then held a hearing on the motions for emergency relief. The trial court confirmed that the hearing was not on the motion to dismiss. The court and parties discussed, quite extensively, whether M.R. Pittman had waived its grounds for protest under *Blue & Gold*. The court did not set a deadline for M.R. Pittman to respond to the motion to dismiss. Two weeks after the hearing, the trial court denied M.R. Pittman's motions for emergency relief and granted the government's motion to dismiss. The trial court found that it lacked subject matter jurisdiction under Rule 12(h)(3) of the Rules of the Court of Federal Claims (RCFC).

The trial court found that "the waiver rule for bid protests adopted by the Federal Circuit forecloses [] Pittman's protest" because the USACE's "error was apparent from the onset" and "Pittman had 'the opportunity to object to the terms of' this solicitation 'prior to the close of the bidding process,'" but failed to do so "without any indication of 'good cause to excuse its delay.'" *M.R. Pittman Grp., LLC v. United States*, 154 Fed. Cl. 241, 244 (Fed. Cl. 2021) (quoting *Blue & Gold*, 492 F.3d at 1313, 1315). Specifically, the trial court found that there was a "glaring discrepancy within the solicitation itself" between the omitted NAICS code and the expressly incorporated "Notice of Total Small Business Set-Aside" FAR clause. *Id.* The trial court also stated that the "omission of NAICS Code 811310 from the solicitation [was] obvious, . . . given that the webpage with the link to the solicitation stated that '[t]his is a 100% Small Business Set Aside procurement' and specifically listed the relevant NAICS code." *Id.* at 244 n.4 (second alteration in original). And consequently, the trial court found that "the inconsistency 'could have been discovered by reasonable and customary care,' . . . by reading either the pre-solicitation information or the provisions of the FAR incorporated in the solicitation." *Id.* at 244. The court

thus held that M.R. Pittman waived its protest grounds under the *Blue & Gold* waiver rule and that this waiver deprived the court of subject matter jurisdiction.

M.R. Pittman filed a motion for reconsideration, which the trial court denied. M.R. Pittman appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review the Court of Federal Claims' legal determinations de novo and its factual findings for clear error. *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1252 (Fed. Cir. 2015).

M.R. Pittman argues that the trial court erred in dismissing the complaint on jurisdictional grounds because the *Blue & Gold* waiver rule does not implicate subject matter jurisdiction. M.R. Pittman also argues that, regardless of whether the waiver rule is jurisdictional, the trial court's application of that rule was improper for both procedural and substantive reasons. We address jurisdiction first.

## A

M.R. Pittman argues that the trial court erred in dismissing the complaint on jurisdictional grounds because the *Blue & Gold* waiver rule does not implicate subject matter jurisdiction. M.R. Pittman argues that it is an "interested party" "objecting to the government's failure to award it the contract associated with the Solicitation," Appellant's Br. 30, and that the Court of Federal Claims has subject matter jurisdiction over M.R. Pittman's claims pursuant to 28 U.S.C. § 1491(b)(1). In its response, the government does not argue that *Blue & Gold* waiver is jurisdictional. Instead, the government argues that even if M.R. Pittman is correct about *Blue & Gold* waiver being nonjurisdictional, the trial court's error is harmless and dismissal would still be proper under RCFC 12(b)(6) for failure to state a claim.

We agree that the waiver rule articulated in *Blue & Gold* is nonjurisdictional. The Supreme Court has stressed a distinction between "jurisdictional prescriptions" and "nonjurisdictional claim-processing rules." *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019). In *Blue & Gold*, we held that

> a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.

492 F.3d at 1313. We also explained that the rule reduces the need for the "inefficient and costly" process of agency rebidding "after offerors and the agency ha[ve] expended considerable time and effort submitting or evaluating proposals in response to a defective solicitation." *Id.* at 1314 (internal quotation marks and citation omitted).

We hold that the *Blue & Gold* waiver rule—which seeks to reduce inefficiencies by requiring an objection to a solicitation be made prior to the close of bidding—is more akin to a nonjurisdictional claims-processing rule since it "seeks to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). For example, in *E.P.A. v. EME Homer City Generation, L.P.*, the Supreme Court found the Clean Air Act's requirement that, to maintain an objection in court on certain issues, one must first raise the objection "with reasonable specificity" during agency rulemaking to be nonjurisdictional because that requirement "d[id] not speak to a court's authority, but only to a party's procedural obligations." 572 U.S. 489, 511–12 (2014); *see also Fort Bend Cnty*, 139 S. Ct. at 1850 (listing "several other time prescriptions for procedural steps in judicial or agency forums" that the Supreme Court has categorized as

nonjurisdictional). Similarly, the requirement that a party object to a solicitation containing a patent error prior to the close of bidding does not speak to the Court of Federal Claim's authority to hear a case, but only to that party's procedural obligations.

We thus conclude that the Court of Federal Claims erred in holding that M.R. Pittman's failure to object to the solicitation before the close of bidding created a jurisdictional defect. The Court of Federal Claims did have jurisdiction over M.R. Pittman's claims under 28 U.S.C. § 1491(b)(1). The fact "[t]hat the Court of Federal Claims based its dismissal on lack of subject matter jurisdiction, however, is not fatal to the judgment of dismissal." *Adair v. United States*, 497 F.3d 1244, 1251 (Fed. Cir. 2007). We therefore turn to the merits of the decision.

B

Beginning with M.R. Pittman's procedural arguments: M.R. Pittman first argues that the trial court erred in deciding the motion to dismiss before M.R. Pittman filed a formal response to the motion. M.R. Pittman explains that the trial court only set deadlines for the motions for emergency relief and that a schedule for M.R. Pittman to respond to the motion to dismiss would be set at the hearing on the motions for emergency relief. *See* Appellant's Br. 16–20. As a result, M.R. Pittman never filed a brief formally responding to the motion to dismiss and urges us to reverse the dismissal to provide it an "opportunity to respond to the Motion to Dismiss." *Id.* at 25.

The Supreme Court has stated that "a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon." *Neitzke v. Williams*, 490 U.S. 319, 329 (1989). This notice and opportunity to amend enables the plaintiff "meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so

as to conform with the requirements of a valid legal cause of action." *Id.* at 329–30. The opportunity to respond "crystallizes the pertinent issues and facilitates appellate review of a trial court dismissal by creating a more complete record of the case." *Id.* at 330.

Even though M.R. Pittman never filed a formal brief opposing the motion to dismiss, it had a more than sufficient opportunity to respond to the government's motion to dismiss. As explained above, the government filed a combined Motion to Dismiss and Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. That combined filing had a single section on application of the *Blue & Gold* waiver rule. That section comprised both the entirety of the government's motion to dismiss and the entirety of the government's arguments regarding the likelihood of success on the merits, which is a mandatory element of emergency injunctive motions. *See Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018). The applicability of *Blue & Gold* waiver was discussed extensively at the hearing on the emergency motions. And the government's arguments regarding likelihood of success on the merits for the motions for emergency relief and its arguments regarding the motion to dismiss were one and the same. Thus, in responding to the former, M.R. Pittman also responded to the latter.

In arguing that the court committed reversible error in deciding the motion to dismiss before M.R. Pittman filed a formal brief in opposition, M.R. Pittman relies heavily on our decision in *ArthroCare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365 (Fed. Cir. 2005). Appellant's Br. 20–25. In that case, we remanded for further briefing and reconsideration of a dismissal under Rule 12(b)(6) where the opposing party had no opportunity to respond to the arguments for dismissal because the case had been stayed. *Id.* at 1369. M.R. Pittman argues that this case is analogous to *ArthroCare* because the court explicitly stated that the hearing and briefing would only pertain to the motions for

emergency relief. M.R. Pittman's reliance on *ArthroCare* is misplaced for two reasons.

First, the law applicable in *ArthroCare* is not applicable here. Our decision in *ArthroCare* applied the law of the Third Circuit, which had adopted "a categorical rule" that a Rule 12(b)(6) motion can be decided only after affording the non-moving party an opportunity to respond. *Id.* We, on the other hand, have never held that a plaintiff is categorically entitled to an opportunity to oppose a Rule 12(b)(6) motion. To the contrary, we have held that the Court of Federal Claims "may dismiss *sua sponte* under Rule 12(b)(6), provided that the pleadings sufficiently evidence a basis for that action." *Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed. Cir. 2006). Second, the facts in *ArthroCare* are quite different from the facts of this case. As just explained, M.R. Pittman had substantively responded to the motion to dismiss both in its briefing on the motion for preliminary injunction as well as at oral argument. That is a far cry from the facts in *ArthroCare*, where the defendant did not have an opportunity to respond to the plaintiff's motion to dismiss an antitrust counterclaim because the case had been stayed. *ArthroCare*, 406 F.3d at 1368.

To be sure, M.R. Pittman's assumption that it would have the opportunity to file another brief before the motion to dismiss was decided was a reasonable one given the trial court's statements to that effect. That fact, however, does not mean that the loss of that opportunity amounts to harmful procedural error. *See* 28 U.S.C. § 2111 ("On the hearing of any appeal . . . , the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."). For the reasons set forth above, M.R. Pittman was not harmed by its inability to submit a formal brief opposing the motion to dismiss.

M.R. Pittman also argues that the trial court erred in dismissing the case before the production of the administrative record. *See* Appellant's Br. 25–27. According to M.R. Pittman, the government violated RCFC, Appendix C, Section VII when the government failed to produce the administrative record after M.R. Pittman requested it. But Section VII only requires production of the administrative record "by the date(s) established at the initial status conference." RCFC, App. C, Sec. VII. In this case, the trial court did not set a date to produce the administrative record during the status conference, so the government could not have violated Section VII.

Moreover, the portions of the administrative record that M.R. Pittman seeks are not relevant to the patent ambiguity analysis. M.R. Pittman seeks, *inter alia*, documents related to another bidder that was not awarded the contract despite the fact that this contractor's bid was lower than the awardee's bid. M.R. Pittman appears to argue that the reason that this second contractor was not awarded the contract is because, like M.R. Pittman, it was not a small business under the relevant NAICS code. *See* Appellant's Br. 26 (quoting J.A. 213). But as explained below, whether a contract contains a patent or latent ambiguity is a question of law, not fact. Therefore, whether this other bidder was also not a small business under the proper NAICS code is irrelevant to the analysis.

In sum, we hold that the trial court did not commit reversible procedural error when it ruled on the government's motion to dismiss before M.R. Pittman filed a formal response to the motion. Nor was M.R. Pittman prejudiced by the fact that the administrative record had not been produced before the action was dismissed. Having rejected M.R. Pittman's procedural arguments, we turn to its substantive arguments as to why *Blue & Gold* waiver is inapplicable in this case.

C

As explained above, *Blue & Gold* requires that a party with the opportunity to object to the terms of a government solicitation containing a patent error must do so prior to the close of the bidding process or else it waives its ability to raise that objection in the Court of Federal Claims. 492 F.3d at 1313. That M.R. Pittman had the opportunity to, but did not, inquire about the missing NAICS code is undisputed. The dispute here lies in whether the missing NAICS code—when considered with the solicitation's webpage or the FAR provision incorporated in the solicitation—constituted a patent omission from the solicitation. If the omission is patent, then M.R. Pittman waived its protest ground by failing to object before the close of bidding. If the omission is latent, then M.R. Pittman can proceed with its bid protest. We conclude that the omission was patent.

"Whether an ambiguity or defect is patent is an issue of law reviewed de novo." *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1312 (Fed. Cir. 2016). A defect in the solicitation is "patent" "if it is an obvious omission, inconsistency, or discrepancy of significance" or "if it could have been discovered by reasonable and customary care." *Inserso Corp. v. United States*, 961 F.3d 1343, 1349 (Fed. Cir. 2020). Furthermore, when interpreting a contract, the parties are charged with knowledge of law and fact appropriate to the subject matter. *Turner Const. Co. v. United States*, 367 F.3d 1319, 1321 (Fed. Cir. 2004).

Here, we agree with the trial court that the solicitation's incorporation of FAR 52.219-6—titled "Notice of Total Small Business Set-Aside"—and the statement of the solicitation's webpage that "[t]his is a 100% Small Business Set Aside procurement" with the relevant NAICS code renders the omission patent as a matter of law. J.A. 4–5; J.A. 61, 256.

M.R. Pittman's arguments to the contrary are unconvincing. M.R. Pittman argues that, because FAR 52.219-6

only applies to solicitations that have been totally set-aside for small businesses, "there is no incorporation in the Solicitation itself to say that this Solicitation was totally set aside for small business concerns, this Solicitation, as a matter of law, has not been set aside for any such purpose." Appellant's Br. 29. In other words, M.R. Pittman argues that, because FAR 52.219-6 is conditional and the omission of the proper NAICS code means the condition was never triggered, "FAR 52.219-6 is not applicable to the Solicitation" and therefore cannot create a patent ambiguity. *Id.*; *see also id.* at 27–29; FAR 52.219-6(b)(1) ("This clause applies only to . . . [c]ontracts that have been totally set aside for small business concerns[.]").

But as the trial court correctly determined, to accept this argument "is to ignore the incorporated FAR regulation." *M.R. Pittman Grp.*, 154 Fed. Cl. at 244. What M.R. Pittman's argument fails to account for is the fact that the incorporation of FAR 52.219-6 evidences an inconsistency in the solicitation given the omission of the code. The incorporation of the FAR provision suggests an error—either the FAR clause was incorporated when it was not applicable or an NAICS code was omitted when it was required.

Such an ambiguity is especially glaring given the fact that the webpage with the link to the solicitation noted, "**This is a 100% Small Business Set Aside procurement.**" M.R. Pittman argues that the webpage is irrelevant to whether there was a patent ambiguity because the webpage was not incorporated into the solicitation and "[a] patent ambiguity cannot be created where the 'solicitation itself is facially unambiguous and the only conflict that allegedly exists is between the solicitation and some ancillary source of information.'" Appellant's Reply Br. 18–19 (quoting *Lab'y Corp. of America v. United States*, 108 Fed. Cl. 549, 566 (Fed. Cl. 2012)).

But the incorporation of a FAR clause created an ambiguity that a reasonably diligent contractor would seek to

clarify. Therefore, the solicitation cannot be said to be "facially unambiguous." Moreover, M.R. Pittman's suggestion that extrinsic evidence can never be used to determine whether an ambiguity was patent to one of the contracting parties is wrong as a matter of law.

> Where an ambiguity is not so glaring as to rise to the level of patency, yet the contractor knows or has reason to know that the drafting party, unaware of the contractor's interpretation, holds an interpretation different than its own, the result when that contractor seeks to bridge the crevasse in his own favor should be no different than if the ambiguity were patent.

*HPI/GSA 3C, LLC v. Perry*, 364 F.3d 1327, 1336–37 (Fed. Cir. 2004) (citation and quotation marks omitted). Indeed, in *Per Aarsleff A/S v. United States*, we held patent a defect that was reasonably discoverable by examining the Danish central business register where companies were required to register. 829 F.3d at 1313.

Finally, M.R. Pittman makes two arguments for the first time in its reply brief that we also find unpersuasive.[2] First, M.R. Pittman argues that, since it "gain[ed] no advantage by waiting to object," the purpose of the *Blue & Gold* waiver rule was not met and the rule should not apply. Appellant's Reply Br. 15. But the assertion that M.R. Pittman did not benefit from waiting to object is simply not true. Had M.R. Pittman inquired into the set-aside status, it risked the USACE amending the solicitation to add the missing code, in which case it would be clear that M.R.

---

[2]   Regardless of their persuasiveness, these arguments are also forfeited. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

Pittman was ineligible for the contract. By not seeking clarification on the set-aside status of the solicitation, M.R. Pittman left itself the ability to argue that the solicitation was not a small-business set-aside for lacking the required NAICS code. Second, M.R. Pittman argues that the solicitation also incorporates other FARs that M.R. Pittman contends are inapplicable. *See* Appellant's Reply Br. 20–22 (identifying FAR 52.219-7, 27, 29, and 30 as being incorporated at J.A. 69–70). But the provisions M.R. Pittman points to are only incorporated if "the Contracting Officer has indicated [them] as being incorporated in th[e] contract by reference." J.A. 68. There is no indication that the contracting officer marked FAR 52.219-7, 27, 29, or 30 as being incorporated. FAR 52.219-6, on the other hand, is explicitly incorporated by reference. J.A. 61.

In sum, we agree with the trial court that M.R. Pittman waived its protest grounds under the *Blue & Gold* waiver rule.

## III

We have considered M.R. Pittman's remaining arguments, but we find them unpersuasive. Accordingly, the judgment of the Court of Federal Claims is affirmed, albeit for failure to state a claim rather than for a lack of subject matter jurisdiction.

**AFFIRMED**