# United States Court of Appeals for the Federal Circuit

---

**HAHNENKAMM, LLC,**
*Plaintiff-Cross-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2022-2018, 2022-2054

---

Appeals from the United States Court of Federal Claims in No. 1:17-cv-00855-CFL, Senior Judge Charles F. Lettow.

---

Decided:  June 21, 2024

---

ROGER J. MARZULLA, Marzulla Law, LLC, Washington, DC, argued for plaintiff-cross-appellant.  Also represented by NANCIE GAIL MARZULLA.

GEOFFREY M. LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY; JOSHUA RIDER, Office of the General Counsel, United States Department of Agriculture, San Francisco, CA.

---

Before DYK, CUNNINGHAM, *Circuit Judges* and
BENCIVENGO, *District Judge.*[1]

DYK, *Circuit Judge.*

This case involves a claim for breach of a land purchase contract between Hahnenkamm, LLC ("Hahnenkamm"), and the United States Forest Service ("Forest Service"). The Court of Federal Claims ("Claims Court") held that the Forest Service breached the agreement by not supporting the purchase price with an independent appraisal that complied with the Uniform Appraisal Standards for Federal Land Acquisitions (hereinafter, the "Yellow Book").[2] We understand the Claims Court's decision to find a breach of an implied warranty that the purchase price was supported by an independent, Yellow Book-compliant appraisal. The Claims Court rejected the government's affirmative defenses of waiver and equitable estoppel and awarded damages to Hahnenkamm.

The government does not appeal the breach of implied warranty determination except to the extent it appeals the Claims Court's rejection of its affirmative defenses. As to the defense of waiver, we conclude that Hahnenkamm could not have reasonably relied on the contractual representation that the appraisal was independent, but conclude that further proceedings on remand are necessary as to whether it reasonably relied on the representation that the appraisal was Yellow Book-compliant. We also remand the Claims Court's rejection of the equitable estoppel defense.

---

[1]    Honorable Cathy Ann Bencivengo, District Judge, United States District Court for the Southern District of California, sitting by designation.

[2]    Interagency Land Acquisition Conference, *Uniform Appraisal Standards for Federal Land Acquisitions* (5th ed. 2000).

Hahnenkamm cross-appeals the damages award contending that the Claims Court erred by not assessing the value of the property as a so-called "trophy property." We affirm the Claims Court's rejection of Hahnenkamm's challenge to the damages award.

BACKGROUND

I

The Forest Service has the authority to acquire land through purchase, exchange, donation, and eminent domain. 43 U.S.C. § 1715(a). The Forest Service's land acquisition authority in this case is governed by the Nevada and Lake Tahoe Basin Land Disposal and Acquisition Act ("Santini-Burton Act"), Pub. L. No. 96-586, 94 Stat. 3381 (1980), and the Southern Nevada Public Land Management Act of 1998 ("Southern Nevada Land Act"), Pub. L. No. 105-263, 112 Stat. 2343. The statutes "provide for acquisition of environmentally sensitive lands in the Lake Tahoe Basin." § 1(b), 94 Stat. at 3381; *see also* § 5(a)(2), 112 Stat. at 2347.

Under the Santini-Burton Act, the Secretary of Agriculture[3] is authorized to acquire lands with the consent of the landowner and also without the consent of the landowner but only after "all reasonable efforts to acquire such lands or interests therein by negotiation have failed." § 3(d), 94 Stat. at 3385; *see also* § 3(c)(1), 94 Stat. at 3384. When acquiring land under this Act, the Secretary of Agriculture is required to support the purchase price with "an independent appraisal made, where practicable, on the basis of comparable sales at the time of acquisition." § 3(e), 94 Stat. at 3385; § 3(c)(5), 94 Stat. at 3385.

---

[3] The Forest Service is part of the Department of Agriculture. U.S. Forest Service Home Page, https://www.fs.usda.gov/ (last visited Apr. 19, 2024).

Under the Southern Nevada Land Act, the Secretary of Interior may only acquire lands with the landowner's consent. § 5(a)(2), 112 Stat. at 2347. The Southern Nevada Land Act provides that "[t]he fair market value of land . . . to be acquired by the Secretary [of Interior] or Secretary of Agriculture under this section shall be determined pursuant to section 206 of the Federal Land Policy and Management Act of 1976 and shall be consistent with other applicable requirements and standards." § 5(c), 112 Stat. at 2348. The Federal Land Policy and Management Act provides that rules and regulations "governing appraisals shall reflect nationally recognized appraisal standards, including to the extent appropriate, the [Yellow Book]." 43 U.S.C. § 1716(f)(2).

The Yellow Book, a publication of the Interagency Land Acquisition Conference, provides guidelines and standards for how the fair market value of a property should be appraised. *See generally Hahnenkamm, LLC v. United States*, 159 Fed. Cl. 678, 687, 690–94 (2022). The Yellow Book is written for use by appraisers. The Forest Service has also adopted regulations governing the process of acquiring land, including appraisal standards. *See generally* 36 C.F.R. § 254; *see also* 36 C.F.R. § 254.9. Under those regulations, the Forest Service is required to adhere to the Yellow Book and Uniform Standards of Professional Appraisal Practice in making appraisals.

## II

In 2008, Hahnenkamm purchased the Cave Rock Summit property, a parcel of land in the Lake Tahoe area of Nevada. After purchasing the property, Hahnenkamm proceeded to secure a variety of permits for developing the land. *Hahnenkamm*, 159 Fed. Cl. at 683. Hahnenkamm first contacted the Forest Service in 2005 and began discussions about selling the property in 2006, despite not yet owning the property.

For the Forest Service to proceed with a voluntary purchase of property the prospective seller must execute a willing-seller statement. In 2009, Hahnenkamm executed a willing-seller form, stating that it was willing to consider a sale of the property to the Forest Service.

The willing-seller form stated that an appraisal of the Cave Rock Summit property would be performed by a "licensed independent appraiser" and in compliance with the Yellow Book. J.A. 299. "A qualified review appraiser employed by the Forest Service [would] review and approve or reject the appraisal report from the independent appraiser to ensure that the appraisal complies with the Uniform Appraisal Standards . . . ." *Id.* Hahnenkamm would be permitted "a reasonable amount of time to consider the offer, ask questions, or request clarifications of any unclear parts of the offer or option." J.A. 300. If Hahnenkamm found the appraised value acceptable, it could extend an option contract "allow[ing] the Forest Service to acquire" the property for the appraised value. *Id.* Hahnenkamm had no obligation to offer an option contract to the Forest Service at the appraised value if it found the value to be unacceptable.

A first appraisal was prepared by Daniel Leck (the "Leck appraisal") that estimated the fair market value of the Cave Rock Summit property to be $4 million. The Leck appraisal was provided to Hahnenkamm, and Hahnenkamm rejected the offer because it "fe[lt] the selection of sales comparables [did] not reflect fair market value and the characteristics of the property." J.A. 483. Hahnenkamm contemplated employing its own appraiser to review the Leck appraisal but decided to request a second appraisal from the Forest Service instead. Hahnenkamm then requested a second appraisal, and Hahnenkamm and the Forest Service agreed that Lance Doré would perform a second appraisal. Mr. Doré was retained by the Forest Service to complete the appraisal.

Mr. Doré completed his appraisal (the "Doré appraisal"), estimating the fair market value of the Cave Rock Summit property to be $5.03 million. Based on the Doré appraisal, the Forest Service extended an offer to Hahnenkamm to purchase the Cave Rock Summit property for $5.03 million. The Forest Service provided Hahnenkamm with a copy of the Doré appraisal, a copy of the Forest Service's Correlated Appraisal Review Report of the appraisal, and a copy of a proposed purchase option agreement.

Hahnenkamm obtained a copy of the Yellow Book and reviewed it and the Doré appraisal in an attempt to determine whether the Doré appraisal was Yellow Book-compliant. Based on its reviews, Hahnenkamm initially rejected the Forest Service's offer, arguing that the Doré appraisal was not Yellow Book-compliant and significantly underestimated the value of the Cave Rock Summit property. Hahnenkamm submitted to the Forest Service a lengthy document raising its issues with the Doré appraisal. As the Claims Court found, in this document, Hahnenkamm "raised concerns" that the Doré appraisal did not comply with the Yellow Book because it "used a comparable involving a forced sale due to bankruptcy, [] it used a government sale comparable, [] it failed to account for deed restrictions on a comparable, [] it failed to consider the value of land permits, and [] it failed to make required adjustments on a comparable." *Hahnenkamm*, 159 Fed. Cl. at 686–87 (citing J.A. 1304–46). Hahnenkamm argued that the fair market value of the Cave Rock Summit property was approximately $75 million. The Forest Service rejected Hahnenkamm's assertions, reiterated that the Doré appraisal complied with the Yellow Book in the specific respects argued by Hahnenkamm, and informed Hahnenkamm that its offer was still $5.03 million. There is no claim that the Forest Service employees' extra-contractual

representations about compliance with the Yellow Book were inaccurate.

Hahnenkamm accepted the Forest Service's offer of $5.03 million and provided an option contract (the "Option Contract") to the Forest Service to purchase the Cave Rock Summit property. The Option Contract stated the purchase price of the property was $5.03 million and, even though the appraisal had already been prepared, stated that the "purchase price shall be supported by an appraisal prepared in conformity with the [Yellow Book]." J.A. 1409–10. The Forest Service exercised its option to purchase the Cave Rock Summit Property on July 7, 2015, and the sale closed on November 4, 2015.

Six months later, in early 2016, Mr. Hartman, the managing partner of Hahnenkamm, saw in a newspaper that a property he believed to be similar to the Cave Rock Summit property had sold for a price "much greater than" $5.03 million. J.A. 2751. Mr. Hartman asserted that this caused him to doubt that the Doré appraisal was Yellow Book-compliant. Hahnenkamm then contacted legal counsel.

### III

In 2017, Hahnenkamm filed suit in the Claims Court asserting that the Forest Service had breached the Option Contract because the appraisal was not independent and did not comply with the Yellow Book. Hahnenkamm also alleged that it relied on the Forest Service's representation in the contract that the appraisal used was independent and complied with the Yellow Book. Hahnenkamm alternatively alleged that the Forest Service violated the Santini-Burton Act and the Southern Nevada Land Act.

After trial, the Claims Court found the Forest Service had a contractual duty to support the purchase price with an independent, Yellow Book-compliant appraisal and had

breached its duty because the Doré appraisal was not independent and not Yellow Book-compliant. *Hahnenkamm*, 159 Fed. Cl. at 689–95. Those conclusions are not challenged on appeal.

However, at trial and during summary judgment proceedings, the government raised affirmative defenses of waiver and equitable estoppel. The government contended that Hahnenkamm waived its right to challenge the appraisal as non-compliant because Hahnenkamm reviewed the Doré appraisal and related information before extending the Option Contract to the Forest Service, "knew of (1) the Yellow Book, (2) its right to appraisal in compliance with the Yellow Book's guidelines, and (3) the Forest Service's intention to rely on the Doré appraisal to derive the value of Cave Rock Summit," and voluntarily entered into the contract. *Hahnenkamm, LLC v. United States*, 147 Fed. Cl. 383, 389 (2020) (deferring motions for summary judgment). With respect to the issue of independence, the government argued that "Hahnenkamm knew before the sale that Ms. McAuliffe[4] had, in developing her review report, reviewed drafts of Mr. Doré's appraisals and provided comments—she detailed the process in her correlated appraisal review report, which was provided to Hahnenkamm." Defendant Post-trial Br. at 44, Hahnenkamm, LLC v. United States, No. 17-cv-0855, ECF No. 134. In the alternative, the Forest Service argued that Hahnenkamm should be equitably estopped from challenging the appraisal because Hahnenkamm entered into the contract without reserving its right to challenge the appraisal.

The Claims Court rejected the government's affirmative defenses. *Hahnenkamm*, 159 Fed. Cl. at 689 & n.7. At summary judgment, the Claims Court determined that the government's affirmative defense of equitable estoppel

---

4    Ms. McAuliffe was the Forest Service reviewer.

failed because the government could not identify any bad faith or intent to mislead and thus failed to demonstrate misleading conduct on the part of Hahnenkamm. *Hahnenkamm*, 147 Fed. Cl. at 388 n.7. The Claims Court deferred ruling on the issue of waiver because it found a factual dispute with respect to Hahnenkamm's subjective state of mind at the time the Option Contract was executed. *Id.* at 389–90. After trial, the Claims Court denied the waiver defense "based on the evidence addressed at trial" without further explanation. *Hahnenkamm*, 159 Fed. Cl. at 690.

The Claims Court acknowledged Hahnenkamm alleged that the Forest Service violated the Santini-Burton Act and Southern Nevada Land Act, but only addressed Hahnenkamm's breach of contract claim in its post-trial opinion, apparently on the ground that the contract itself imposed the same requirements as the statutes. Hahnenkamm does not raise the issues of statutory violations on appeal and concedes that we need not address the issue of statutory compliance.

The Claims Court determined that, because of the breach, Hahnenkamm was entitled to be paid the fair market value of the Cave Rock Summit property. The Claims Court determined that value to be $9 million and that Hahnenkamm was entitled to $3.97 million in expectation damages, which represented the excess value over the amount originally paid. The Claims Court rejected Hahnenkamm's argument that the Cave Rock Summit property's highest and best use was a so-called "trophy property" that deserved an "extraordinary premium." *Id.* at 694.

The government appeals the Claims Court's denial of its affirmative defenses. Hahnenkamm cross-appeals the Claims Court's determination of damages. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

"We review the [Claims Court's] decision de novo for errors of law and for clear error on findings of fact." *Agredano v. United States*, 595 F.3d 1278, 1280 (Fed. Cir. 2010). "Contract interpretation is a matter of law, and is therefore reviewed de novo." *Id.*

I

Before addressing the merits of the government's affirmative defenses, we must first construe the Option Contract's appraisal provision. The appraisal provision of the Option Contract states:

> The purchase price shall be supported by an appraisal prepared in conformity with the Uniform Appraisal Standards for Federal Land Acquisition.

J.A. 1410.

We note the Claims Court's opinion suggests that the Forest Service had an obligation under the contract to pay fair market value for the Cave Rock Summit property. *Hahnenkamm*, 159 Fed. Cl. at 689. We disagree.

The contract did not provide that the government would pay fair market value as assessed after the fact. There is no single, precise "fair market value" for a given property. As Hahnenkamm acknowledged at oral argument, two appraisals can reach two different conclusions of the value of a property, but both still be Yellow Book-compliant and thus provide a basis for determining fair market value. The appraisal provision only provides a representation that the purchase price stated in the contract is supported by an independent, Yellow Book-compliant appraisal, not a separate obligation to pay the fair market value as determined after the fact. Hahnenkamm conceded at oral argument that the Option Contract did not

provide that Hahnenkamm would be paid fair market value as determined after the fact.[5]

At oral argument, the government argued the appraisal provision was simply a condition to the contract, and Hahnenkamm contended it was a representation or a warranty that the proper protocol had been followed by the Forest Service.

We agree with Hahnenkamm and interpret the appraisal provision to be a representation (an implied warranty) that the purchase price was supported by an independent, Yellow Book-compliant appraisal. While the contract does not explicitly reference the Doré appraisal, both parties acknowledge the Option Contract was referring to the Doré appraisal as the required appraisal. Thus, the provision was an implied warranty that the Doré appraisal was an independent, Yellow Book-compliant appraisal.

We also agree with the Claims Court that the government could be held liable for damages flowing from the Forest Service's representation if it was inaccurate and other requirements are satisfied. It has long been established that in government contract cases the government "is liable for damage attributable to misstatements of fact (in a contract or specifications) which are representations made to the contractor." *Flippin Materials Co. v. United States*, 312 F.2d 408, 413 (Ct. Cl. 1963); *see also Flippin*, 312 F.2d at 413 n.8 (collecting cases).

---

[5]   THE COURT: "The contract did not provide that they would be paid fair market value."
    COUNSEL FOR HAHNENKAMM: "It did not. As the court said, it said the sales price would conform to . . . [the] Yellow Book."
Oral Arg. 33:38–45.

For example, the government has been held liable for damages incurred due to inaccurate statements in bid specifications on the theory that there is an implied warranty that these statements are accurate. *See, e.g.*, *United States v. Spearin*, 248 U.S. 132, 137 (1918) (finding a contract provision "prescribing the character, dimensions, and location of the sewer [to be constructed] imported a warranty that if the specifications were complied with, the sewer would be adequate"); *Morrison-Knudsen Co. v. United States*, 345 F.2d 535, 539 (Ct. Cl. 1965) (finding "positive representations amounted to a warranty . . . and established a predicate for a possible action for breach of contract"); *Everett Plywood & Door Corp. v. United States*, 419 F.2d 425, 431 (Ct. Cl. 1969); *E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1338 (Fed. Cir. 2004) ("Whenever the government uses specifications in a contract, there is an accompanying implied warranty that these specifications are free from errors."); John Cibinic, Jr., et al., *Administration of Government Contracts* 237 (5th ed. 2016) ("Absent express provisions, the government's liability is based on an implied warranty that the information furnished is correct.").

II

On appeal, the government does not challenge the Claims Court's determination that it was obligated to support the purchase price with an independent, Yellow Book-compliant appraisal, nor does it challenge the Claims Court's determination that the Doré appraisal was not Yellow Book-compliant and was not independent. However, the government argues that Hahnenkamm waived its right to recover for the misrepresentation that the Doré appraisal was Yellow Book-compliant and independent. Under the circumstances, the government's argument is best characterized as an argument that Hahnenkamm did not rely on this representation when it entered into the

contract and that it could not reasonably rely on the representation in any event.[6]

## III

Although the Claims Court viewed the relevant question to be whether Hahnenkamm subjectively believed the appraisal was independent and Yellow Book-compliant, that is not the relevant inquiry. *See Hahnenkamm*, 147 Fed. Cl. at 389. The issue is whether, objectively, a contracting party did in fact rely and could have reasonably relied on the appraisal provision under the circumstances. *See E.L. Hamm*, 379 F.3d at 1339–43 (analyzing separately whether contracting party actually relied on representation and whether such reliance was reasonable).

In general, "a warranty is an assurance by one party to an agreement of the existence of a fact upon which the other party may rely; it is intended precisely to relieve the

---

[6]    *See* Appellant Opening Br. 26 (arguing that "Hahnenkamm had access to the information it needed to decide for itself whether the Doré appraisal matched Hahnenkamm's own assessment of fair market value"); Def.'s Am. Answer at 8, Hahnenkamm, LLC v. United States, No. 17-cv-0855, ECF No. 32 (arguing Hahnenkamm "waived its claims" because prior to the sale it "was aware of facts that now give rise to its claim that the Government violated statutes and breached the parties' sales contract").

If a contract defect is patent (apparent on the face of the contract), which is not the case here, waiver may exist. *See Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) ("We also hold that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.").

promisee of any duty to ascertain the facts for himself." *Oman-Fischbach Int'l (JV) v. Pirie*, 276 F.3d 1380, 1383 (Fed. Cir. 2002) (citation omitted). However, as we discuss below, statements of opinion, such as statements of value, typically cannot be relied on without a further showing.

A recipient of a misrepresentation also "is not entitled to relief if his reliance was unreasonable in the light of his particular circumstances." Restatement (Second) of Contracts § 172 cmt. a (Am. L. Inst. 1981).[7] The Restatement (Second) of Contracts further explains

> [i]f the recipient knows that the assertion is false or should have discovered its falsity by making a cursory examination, his reliance is clearly not justified and he is not entitled to relief. . . . He is expected to use his senses and not rely blindly on the maker's assertion. On the other hand, he is not barred by the mere failure to investigate the truth of a misrepresentation, even where it might be reasonable to do so.

Restatement (Second) of Contracts § 172, cmt. b (Am. L. Inst. 1981) (internal citation omitted).[8] At the same time, receiving information that suggests inaccuracy can trigger

---

[7]  In the government contract context, and, in particular, for the issue of misrepresentations, we have looked to the Restatement (Second) of Contracts (Am. L. Inst. 1979). *See, e.g.*, *T. Brown Constructors, Inc. v. Pena*, 132 F.3d 724, 729 (Fed. Cir. 1997).

[8]  The commentary in the Restatement (Second) of Contracts § 172 cites to the Restatement (Second) of Torts discussion of duty to investigate, which provides a similar standard. *See* Restatement (Second) of Torts § 540, cmt. a ("[I]f a mere cursory glance would have disclosed the falsity of the representation its falsity is regarded as obvious . . . .").

a duty to investigate beyond a "cursory examination." Various state decisions recognize that a party is not entitled to rely on a representation when it is aware of issues that would cause a reasonable person to doubt the representation (i.e., there are red flags).[9] *See also* Restatement (Second) of Torts § 540, Reporters Note (recognizing "[s]ome jurisdictions impose a duty to investigate, especially if there is reason to suspect that the statement is false.").

Our own case law in the government contract context similarly recognizes that a contracting party cannot recover if a defect in a contract specification is patent—i.e., one that is "glaring or obvious" from a facial inspection of the specification—because reliance on such a defect is not reasonable. *E.L. Hamm*, 379 F.3d at 1342–43; *M.R. Pittman Grp., LLC v. United States*, 68 F.4th 1275, 1283 (Fed. Cir. 2023) ("A defect in the solicitation is 'patent' 'if it is an obvious omission, inconsistency, or discrepancy of

---

[9]    *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 655 (Tex. 2018) ("[A] person may not justifiably rely on a misrepresentation if 'there are "red flags" indicating such reliance is unwarranted.'" (quoting *Grant Thornton, LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010))); *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1158 (10th Cir. 1985) (noting that under Kansas law the test for reasonable reliance on a fraudulent misrepresentation "is whether the recipient has information which would serve as a danger signal and a red light to any normal person of his intelligence and experience" (citation and internal quotation marks omitted)); *Calloway v. Wyatt*, 97 S.E.2d 881, 885 (N.C. 1957) (finding buyer could not rely on the seller's fraudulent representation of there being "plenty of water" when buyer's suspicions should have been aroused that the representations were false and buyer could have investigated the water supply to confirm the representations).

significance' or 'if it could have been discovered by reasonable and customary care.'" (quoting *Inserso Corp. v. United States*, 961 F.3d 1343, 1349 (Fed. Cir. 2020))); *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1313 (Fed. Cir. 2016) (same). While there is no patent defect here apparent on the face of the contract, we have also held that even when the defect is not patent "reliance is unreasonable when a contractor has reason to doubt the accuracy of a representation, such as knowledge of a flaw in the information underlying the representation," (i.e., there are red flags). *Int'l Tech. Corp. v. Winter*, 523 F.3d 1341, 1352 (Fed. Cir. 2008).

The examples of government contract cases involving lack of reasonable reliance because of contractor knowledge are legion. For example, in *Robins Maintenance, Inc. v. United States*, we determined that a contractor could not reasonably rely on a misstatement in the specification about the amount of acreage that was to be serviced because the contractor was aware that the stated acreage was inaccurate. 265 F.3d 1254, 1258 (Fed. Cir. 2001).

In *International Technology Corp. v. Winter*,[10] we affirmed the Armed Services Board of Contract Appeals's

---

[10] We note that *International Technology* is a so-called "Differing Site Conditions" case, which is a specific line of cases for which our precedent has developed specific rules. Differing Site Conditions cases typically involve contracts with a clause that provides that a contractor has taken reasonable steps to investigate a construction site's conditions, "including all exploratory work done by the Government" and the specifications that are part of the contract. 48 C.F.R. § 52.236-3. Those provisions also relieve the Government from responsibility of conclusions made by the contractor and clarify the Government is not responsible for "any understanding reached or representation made concerning conditions . . . unless that

finding that a contractor could not reasonably rely on clay content figures in a report to represent that the clay content in a stockpile was below ten percent "because it was aware of a flaw in how those test samples were obtained." 523 F.3d at 1352. Because the contractor was aware of the flaws in the sampling method and that those types of flaws would mean that the values in the provided report revealed nothing about the soil in the middle of the stockpile, the reliance on those figures was not reasonable. *Id.* at 1353.

Similarly, in *Helene Curtis Industries, Inc. v. United States*, our predecessor court found no liability when the contractor contracted to supply chlormelamine to the Army was aware of a misrepresentation that the chlormelamine could be produced without any need for grinding. 312 F.2d 774, 776–79 (Ct. Cl. 1963). The need for grinding caused production issues and led to increased costs. *Id.* at 776. The Court of Claims determined that the contractor could not recover damages stemming from the misrepresentation because the contractor was aware of the misrepresentation when it entered into the contract. *Id.* at 779.[11]

---

understanding or representation is expressly stated in [the] contract." *Id.* No such contract clauses are involved here. However, we find *International Technology* informative because the contract at issue there did not contain a Differing Site Conditions clause, and the court noted, "[t]he same requirements apply whether the contractor asserts such a common law breach claim or a Type I claim under the Differing Site Conditions clause." 523 F.3d at 1348.

[11] However, the Court of Claims affirmed liability for an earlier contract the contractor entered into before the contractor became aware of the misrepresentation. *Id.* at 778.

IV

In applying these general principles to the facts of this case, "we review the question of whether a contractor reasonably relied upon a representation as a question of fact." *Int'l Tech.*, 523 F.3d at 1352. The burden is on the contractor to establish reasonable reliance. In government contract law, we have repeatedly held that "[i]n order for a contractor to prevail on a claim of misrepresentation, the contractor must show that the [g]overnment made an erroneous representation of a material fact that the contractor honestly and reasonably relied on to the contractor's detriment." *AT&T Commc'ns, Inc. v. Perry*, 296 F.3d 1307, 1312 (Fed. Cir. 2002) (quoting *T. Brown Constructors*, 132 F.3d at 729). Reasonable reliance is thus part of plaintiff's case and is necessary to prevail on a claim that it was damaged from an inaccurate representation in the contract. *See also E.L. Hamm*, 379 F.3d at 1339 (noting that in order to recover, the contractor must show that it relied on the defect in the specification and that such reliance was not unreasonable).

A

We first consider whether Hahnenkamm established that it reasonably relied on the Forest Service's representation that the Doré appraisal was independent.[12] The

---

[12] Hahnenkamm argues that a waiver defense must fail because the requirement that an "appraiser determine the fair market value of the property to be acquired" is a statutory requirement under the Santini-Burton Act and Southern Nevada Land Act that cannot be waived. Cross-Appellant Br. 36–40. We disagree with Hahnenkamm. The issue here is whether Hahnenkamm waived the right to enforce the implied warranty in the Option Contract (i.e., whether it reasonably relied on the representation). The mere fact that the implied warranty in the contract

Claims Court interpreted the appraisal provision to represent that the appraisal would be independent and determined that the Doré appraisal lacked independence because "the Forest Service review appraiser, Ms. McAuliffe, had significant and ongoing communications with Mr. Doré while Mr. Doré prepared his appraisal, provided comparable sales data, and was permitted not only to see Mr. Doré's draft appraisal before it was finished but also to make comments and suggestions that resulted in substantive changes to the report's conclusion of fair market value." *Hahnenkamm*, 159 Fed. Cl. at 695. The Claims Court determined that "Ms. McAuliffe's communications and suggestions during the drafting of the report [] influenced it." *Id.*

Notably, Hahnenkamm itself was in contact with Mr. Doré and had provided him with a variety of materials. J.A. 878–82. Hahnenkamm was also aware of the facts that led to the Claims Court finding that the Doré appraisal was not independent because the Correlated Appraisal Review Report, which Hahnenkamm had received, indicated that Ms. McAuliffe reviewed drafts of the Doré appraisal and had provided comments on them, at least some of which were addressed by Mr. Doré. J.A. 1092. Because Hahnenkamm was aware of the Forest Service's involvement with the Doré appraisal, as a matter of law, Hahnenkamm could not have reasonably relied on the representation that the appraisal was independent in this respect. *Helene Curtis*, 312 F.2d at 779 (finding that a

---

has its origins in statute does not mean it cannot be waived. *See Millmaster Int'l Inc. v. United States*, 427 F.2d 811, 814 (C.C.P.A. 1970), *modified*, 429 F.2d 985 (C.C.P.A. 1970) ("The Supreme Court earlier stated that '(a) party may waive any provision, either of a contract or of a statute, intended for his benefit.'" (quoting *Shutte v. Thompson*, 82 U.S. (1 Wall) 151, 159 (1872))).

contractor who entered into an agreement "with its eyes open" to the fact a representation was inaccurate "could no longer assert that it was relying on a misrepresentation").

B

The question whether Hahnenkamm reasonably relied on the Forest Service's representation in the Option Contract that the Doré appraisal was Yellow Book-compliant is more difficult.  The contract stated that "[t]he purchase price shall be supported by an appraisal prepared in conformity with the Uniform Appraisal Standards for Federal Land Acquisitions."  J.A. 1410.  The Claims Court found the Doré appraisal did not comply with the Yellow Book.  With respect to "comparables 1, 2, and 3[,] [they] lacked the same permits and entitlements that were in place for Cave Rock Summit"; they were all government sales or forced sales (i.e., bankruptcy sales), which required "extraordinary verification to ensure that they reflected market value and properly documented adjustments if necessary"; and they did "not replicate[] or match[]" "[t]he views and privacy offered" by the Cave Rock Summit Property.  *Hahnenkamm*, 159 Fed. Cl. at 691–93.  The Claims Court also found that comparables 4, 5, 6, and 7 were too small to have the same highest and best use as the Cave Rock Summit property.  *Id.* at 693.

We do not think that the question of reliance and reasonable reliance on Yellow Book-compliance can be decided as a matter of law on this appeal.  Given the Claims Court's application of an incorrect standard (subjective belief) and the parties' failure to focus on the relevant cases, we conclude the parties should be permitted to present further evidence as to whether Hahnenkamm relied on the contractual representation of Yellow Book-compliance and whether this reliance was objectively reasonable.  In order to recover, Hahnenkamm must establish three propositions.

First, Hahnenkamm must establish that it in fact relied on the representation in the first place. Here, Hahnenkamm elected to conduct a detailed investigation of the accuracy of the representation as to the Yellow Book-compliance, including obtaining a copy of the Yellow Book and raising numerous supposed flaws in Yellow Book-compliance with the Forest Service. As Hahnenkamm admitted at oral argument, at the time of executing the Option Contract, Hahnenkamm was aware of all of the facts that the Claims Court found rendered the Doré appraisal non-compliant.[13] And it questioned the appraisal with respect to the comparables on which the Claims Court ultimately relied in finding non-compliance (though not raising the specific flaws on which the Claims Court relied).

For example, in a document titled "Yellow Book Issues Affecting Dor[é] Group Sales Comparables," Hahnenkamm objected to the Forest Service (1) that none of the comparables had the same building permits and entitlements as the

---

[13] THE COURT: "Let me ask a question. So the Court of Federal Claims in finding that this was not a Yellow Book-compliant appraisal relied on various features of the appraisal."

COUNSEL FOR HAHNENKAMM: "Correct."

THE COURT: "Is it accurate to say that your client was aware of each of those features on which the Court of Federal Claims relied to find it not compliant?"

COUNSEL FOR HAHNENKAMM: "Well, not aware that they were non-compliant."

THE COURT: "No. No, I understand that. But just aware of the facts on which the Court of Federal Claims relied."

COUNSEL FOR HAHNENKAMM: "Factually, yes, I can't, I can't say there was any particular fact that the clients were unaware of."

Oral Arg. 31:15–32:01.

Cave Rock Summit property; (2) that comparables 1 and 3 were government sales and comparable 2 was a forced sale; and (3) that properties between 0.5–6 acres in size were "not representative for the buyer looking for a 20 acres–60 acres residential compound like" the Cave Rock Summit property. Hahnenkamm quoted relevant portions of the Yellow Book in this document. *See, e.g.*, J.A. 1304–05, 1307–09.

This investigation is evidence that Hahnenkamm did not in fact rely on the Option Contract's representation of Yellow Book-compliance. The Restatement (Second) of Contracts explains

> [t]he extent of a party's investigation also bears on the question of causation. If he relies solely on his investigation and not on the misrepresentation, he is not entitled to relief. One who makes an investigation will often be taken to rely on it alone as to all facts disclosed to him in the course of it. On the other hand, if the fact is not one that the investigation disclosed or would have been likely to disclose, the recipient may still be relying on the misrepresentation as well as on the investigation. Particularly when the investigation produces results that tend to confirm the misrepresentation but are still somewhat inconclusive, it may be found that the recipient relied on both and that he attached importance to the truth of the misrepresentation in making the contract.

Restatement (Second) of Contracts, § 167, cmt. b; *see also McNabb v. Thomas*, 190 F.2d 608, 611 (D.C. Cir. 1951) (finding no reliance on a representation of a property's value because the party made its own investigation sufficient to make its own estimate of the property's value); *Slaughter's Adm'r v. Gerson*, 80 U.S. 379, 384 (1871); *McCormick & Co. v. Childers*, 468 F.2d 757, 768 (4th Cir. 1972).

Second, if in fact, Hahnenkamm can establish that it relied on the contract representation of Yellow Book-compliance, it must also establish that its reliance was reasonable given that statements of value are statements of opinion that typically cannot be relied upon. *See* Restatement (Second) of Contracts § 168(1) (1981) ("An assertion is one of opinion if it expresses only a belief, without certainty, as to the existence of a fact or expresses only a judgment as to quality, value, authenticity, or similar matters."). A party typically cannot reasonably rely on an expression of opinion as to value, especially when it is aware of all of the relevant facts, as Hahnenkamm was here, Oral Arg. 31:15–32:01. *See* Restatement (Second) of Contracts § 169 ("To the extent that an assertion is one of opinion only, the recipient is not justified in relying on it . . . .").

However, the Restatement acknowledges an exception to this general rule when the recipient "reasonably believes that, compared with himself, the person whose opinion is asserted has special skill, judgment or objectivity with respect to the subject matter." *Id.* § 169(b). Hahnenkamm appears to argue that it reasonably believed that Mr. Doré and the Forest Service had special skill, judgment, and objectivity with respect to determining Yellow Book-compliance that it did not have.

Third, Hahnenkamm must establish that its reliance on the appraisal was reasonable in light of its knowledge of the facts contained in the appraisal and its own investigation as to Yellow Book-compliance.

We express no opinion as to whether Hahnenkamm can prevail in establishing these three propositions. We also express no opinion as to whether Hahnenkamm should be equitably estopped. Equitable estoppel requires "(1) misleading conduct, which may include not only statements and action but silence and inaction, leading another to reasonably infer that rights will not be asserted against it;

(2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted." *SUFI Network Servs., Inc. v. United States*, 755 F.3d 1305, 1325 (Fed. Cir. 2014) (quoting *Lincoln Logs Ltd. v. Lincoln Pre-Cut Homes, Inc.*, 971 F.2d 732, 734 (Fed. Cir. 1992)); *see also Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984) (quoting Restatement (Second) of Torts § 894(1) (1979)). The Claims Court rejected this defense because it found the government failed to show misleading conduct on the part of Hahnenkamm. *Hahnenkamm*, 147 Fed. Cl. at 388 n.7.

The government contends Hahnenkamm engaged in misleading conduct by deciding, "with the benefit of being able to determine for itself whether to accept the Forest Service's reliance on the Doré appraisal, to *then* offer the agency the option to purchase Cave Rock Summit and to accept the Forest Service's performance." Appellant Opening Br. 31. Given that we have interpreted the appraisal provision to be a representation accompanied by an implied warranty, an interpretation not decided below, we remand to the Claims Court to decide whether there is a basis for equitable estoppel based on an implied representation by Hahnenkamm that it viewed the appraisal as Yellow Book-compliant and would not further challenge the appraisal.

V

Since we are remanding in part, we think it is appropriate to consider Hahnenkamm's cross-appeal, although we note it could become moot on remand if the government prevails on either of its defenses. On cross-appeal, Hahnenkamm argues that the Claims Court erred in its damages determination because the Cave Rock Summit property was a "trophy property" and should "engender an extraordinary premium." *Hahnenkamm*, 159 Fed. Cl. at 694.

We review "decisions about methodology for calculating rates and amounts" of damages under an abuse of discretion standard. *Shell Oil Co. v. United States*, 896 F.3d 1299, 1307 (Fed. Cir. 2018) (citation omitted). Hahnenkamm fails to establish that the Claims Court abused its discretion.

Hahnenkamm argues that the Claims Court erred in not designating the Cave Rock Summit property as a "trophy property." Hahnenkamm contends that a trophy property is a "high-end, luxury propert[y] that represent[s] the top 2.5% of the real estate market." Cross-Appellant Opening Br. 15 (citation omitted).

But "trophy property" is not a term used in the Yellow Book for appraising properties.[14] Designating a property as a "trophy property" does not on its face engender an additional premium attached to its value under the Yellow Book guidelines. Such an assertion would appear to be contrary to the Yellow Book's guidelines. As the government's expert, Mr. Roach, testified, and as the Yellow Book states, one of the valuation methods listed in the Yellow Book (i.e., sales comparison approach, cost approach, or income capitalization approach) would still have to be applied to estimate the value of the property even if it were a trophy property. J.A. 2991; *see* Yellow Book at 19–22, 37.[15] We do

---

[14] Both parties agree that the term "trophy property" was coined in 2002 and the operative Yellow Book at the time was published in December 2000.

[15] The only contrary testimony Hahnenkamm cites in its briefs is Dr. Kilpatrick, who the Claims Court determined "lack[ed] knowledge about the requirements and application of the Yellow Book." *Hahnenkamm*, 159 Fed. Cl. at 696 n.10. While other witnesses recognized the trophy property concept, J.A. 958; J.A. 2909–10; J.A. 1089, there was no testimony that trophy property status should

not see how the Claims Court erred in determining that the Cave Rock Summit property's possible status as a trophy property does not require a special premium.

Hahnenkamm also raises a series of specific, subsidiary issues with respect to the Claims Court's damages determination. None has merit.

First, Hahnenkamm argues that the Claims Court "abused its discretion by placing undue weight on a single piece of evidence—i.e., that the property was briefly privately listed for sale, but received no serious inquiries—when it determined the highest and best use for Cave Rock Summit." Cross-Appellant Opening Br. 58. The Claims Court did not abuse its discretion. To be sure, the Claims Court considered the lack of serious inquiries in forming its opinion about the highest and best use. *Hahnenkamm*, 159 Fed. Cl. at 694. However, it is clear that the Claims Court carefully considered the similarities and differences between the Cave Rock Summit property and the comparables in the Doré appraisal, determined that they had the same highest and best uses, and that adjustments could be made to account for the differences. *See Hahnenkamm*, 159 Fed. Cl. at 690–97. We will not disturb the Claims Court's weighing of the evidence under these circumstances. *See Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1361 (Fed. Cir. 2013).

Second, Hahnenkamm argues the Claims Court undervalued the Cave Rock Summit property by ignoring two properties (the Dreyfus and Schmitt properties) as

---

automatically engender a higher premium. The impact of characterizing the Cave Rock Summit property as a trophy property would result in needing to compare it to other trophy properties. Hahnenkamm does not argue the Claims Court erred in relying on comparables 1–3, which are not characterized as trophy properties.

comparables offered by its expert, Dr. Kilpatrick. We see no error here. The Claims Court disregarded Dr. Kilpatrick's report and testimony because his "testimony at trial demonstrated a lack of knowledge about the requirements and application of the Yellow Book," and "his report used inappropriate comparables" and "failed to show adjustments for improvements, entitlements, and location of comparables." *Hahnenkamm*, 159 Fed. Cl. at 696 n.10. Based on this determination, which Hahnenkamm does not challenge, the Claims Court did not err in not considering these properties. Indeed, Dr. Kilpatrick did not use the properties in his appraisal calculations. J.A. 2376 (assigning weights of zero to the two properties); *see also* J.A. 2370–71 (noting properties are "presented for comparison purposes only"). There was no error in the Claims Court not using these properties as comparables.

The Claims Court did not abuse its discretion in its damages analysis.

## CONCLUSION

As to the defense of waiver (reasonable reliance), we conclude that as a matter of law Hahnenkamm could not have reasonably relied on the contractual representation that the Doré appraisal was independent. We conclude that further factfinding and hearing is necessary to determine whether Hahnenkamm reasonably relied on the representation that the Doré appraisal was Yellow Book-compliant. We similarly remand as to the defense of equitable estoppel. We affirm the Claims Court's damages determination.

## REVERSED-IN-PART, VACATED-IN-PART, REMANDED-IN-PART AS TO THE MAIN APPEAL, AFFIRMED AS TO THE CROSS-APPEAL

### COSTS

Costs to neither party.